

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

July 24, 2017

**BY EMAIL AND ECF**

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

  Re:  <u>United States</u> v. <u>Garfield Green</u>, 16 Cr. 781 (RJS)

Dear Judge Sullivan:

  The defendant is scheduled to be sentenced on July 28, 2017, for robbing an employee of an ATM restocking company in Massachusetts in 2014, in violation of 18 U.S.C. § 1951. The United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range stipulated in the defendant's March 27, 2017 plea agreement is 57 to 71 months' imprisonment (the "Stipulated Guidelines Range").

  For the reasons that follow, the Government respectfully submits that a significant incarceratory sentence, such as a sentence within the Stipulated Guidelines Range, would be sufficient, but not greater than necessary, to meet the legitimate purposes of sentencing.

**Background**

  On or about December 2, 2016, the defendant was arraigned on a three-count Indictment, charging him with (i) conspiring to commit an armed robbery; (i) committing an armed robbery; and (iii) brandishing a firearm in furtherance of that robbery and aiding and abetting the same, in violation of 18 U.S.C. §§ 1951, 924(c)(1)(A)(ii), and 2. On March 27, 2017, the defendant pleaded guilty to committing an armed robbery, in violation of 18 U.S.C. § 1951.

  These charges stem from the defendant's participation in the armed robbery of an employee of an ATM restocking company in Everett, Massachusetts, on December 8, 2014. The defendant and his co-defendant Cleon Clarke were recruited to commit this robbery by a co-conspirator ("CC-1"), who asked them to travel from the Bronx to Massachusetts to help CC-1 with a robbery. In furtherance of the robbery, the defendant brought a rental car up from the Bronx, as well as construction vests, so that if the men were stopped in the course of the robbery

they would appear to have a legitimate purpose for being in the area. Once the defendant and Clarke arrived in Massachusetts, CC-1 detailed the specifics of the planned robbery. CC-1 explained that he had been surveilling an individual who worked for an ATM restocking company for some time, and knew that the victim travelled between ATMs with large amounts of cash. During the course of this discussion, CC-1 made clear that this would be an armed robbery, and that CC-1 and Clarke would carry guns. The defendant and Clarke both agreed to help CC-1 with the robbery.

CC-1 knew the victim's daily schedule based on prior surveillance. On the day of the robbery, the defendant drove CC-1 and Clarke to a parking lot where the victim was parked, about to restock an ATM. The defendant served as the driver and while he did not carry a gun during the robbery, as noted above, he knew that Clarke and CC-1 were both carrying guns. Clarke and CC-1 got out of the car and robbed the victim at gunpoint as he stood next to his van. Clarke pushed the gun against the back of the victim's head and forced him inside the van, while CC-1 retrieved three bags of money. Clarke then locked the victim in his van and ran with CC-1 to their getaway car, where the defendant was waiting. The three men, as well as a fourth, unidentified, coconspirator, drove off with approximately $252,000 in cash and returned to the Bronx, where they split the proceeds.



## **Discussion**

The general purposes of sentencing include the need for the sentence imposed to promote respect for the law, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. *See United States* v. *Park*, 758 F.3d 193, 197 (2d Cir. 2014) (citing 18 U.S.C. § 3553(a)(2)). In light of the serious nature of the instant offense as well as the history and characteristics of the defendant, the Government respectfully submits that a significant incarceratory sentence such as a sentence within the stipulated Guidelines range

would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

The sentence imposed in this case should reflect the defendant's extremely serious criminal conduct. This was a violent, premeditated crime. While the defendant did not brandish a gun himself, he knew that his coconspirators had guns and were planning to use them during the robbery. ████████████████████████████████████████████████ Further, the damage caused to the victim could have been much worse if any one of a myriad of things had happened differently. Gunpoint robberies have an explosive potential that can easily turn fatal, as anyone with a passing familiarity with the news knows.

Further, while the defendant acknowledges that committing the Massachusetts robbery was "the poorest decision" that he has ever made, this was not the only robbery that the defendant committed with these individuals. The Government's investigation revealed that he committed a handful of other robberies with CC-1, Clarke, and other individuals from 2012 to 2014. These robberies were of drug dealers and usually involved guns, although the defendant did not carry or brandish these guns. Rather, he was usually the driver, and on several occasions put his co-conspirators in touch with their victims. ████████████████████ this pattern of past criminal conduct is properly considered under Section 3553(a) as part of defendant's history and characteristics, and calls for a significant incarceratory sentence.

## Conclusion

The dangerous nature of the instant offense make a Guidelines sentence appropriate to reflect the seriousness of the defendant's offense and to deter him from future criminal conduct. The Government respectfully submits that the defendant should receive a significant incarceratory sentence, such as a sentence within the Stipulated Guidelines Range of 57 to 71 months.

Respectfully submitted,
PREET BHARARA
United States Attorney

By:    ____/s/ _____
Christopher DiMase/ Margaret Graham/
Jessica Feinstein
Assistant United States Attorneys
(212) 637- 2433/ 2923/ 1946

Cc:    Cesar de Castro, Esq. (by email and ECF)
Counsel for Garfield Green