THE LAW FIRM OF

# CÉSAR DE CASTRO, P.C.

ATTORNEY AT LAW

7 World Trade Center,
34th Floor
New York, New York 10007

646.200.6166 Main
212.808.8100 Reception
646.839.2682 Fax

July 25, 2017

The Honorable Richard J. Sullivan
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

        Re:    *United States v. Garfield Green*, 16 Cr. 781 (RJS)

Dear Judge Sullivan:

Prior to this case, Garfield Green has never been incarcerated. At the time of his sentencing, he will have spent more than seven months imprisoned. These past seven months have had an extraordinary effect on Mr. Green. For this forty-seven year old loving father, his December 2014 decision to participate in the charged robbery was the biggest mistake of is life. As a result, he has lost the ability to support and care for his family, faces possible deportation despite his legal residence in the United States since 2000 and marriage to a United States citizen, and missed the birth of his second child. After his arrest, Mr. Green quickly accepted responsibility.

Mr. Green faces an advisory United States Sentencing Guidelines range of 57-71 months' imprisonment. We respectfully submit that a lengthy prison sentence is not necessary to rehabilitate Mr. Green or deter him from future criminal conduct. He is a forty-seven year old devoted father of two young children who has maintained steady employment for the last sixteen years and was a trusted and extraordinarily hard working member of the Dock Builders Local Union 1556. He has accepted full responsibility for his criminal conduct, not only in this Court but has faced his family and admitted his conduct. Therefore, we respectfully submit that once the Court takes into consideration the factors contained in 18 U.S.C. § 3553(a), it will agree that 24 months' imprisonment is the appropriate sentence.

I.      **The United States Sentencing Guidelines Advisory Range and Probation's Recommended Sentence**

The United States Sentencing Guidelines' (the "Guidelines") calculation contained in the Presentence Investigation Report ("PSR") accurately calculates Mr. Green's offense level and Criminal History Category. Therefore, he faces an advisory Guidelines range of 57-71 months' imprisonment. Mr. Green's history and characteristics, role in the offense, likely deportation, and principles of deterrence support a sentencing variance.

## II. Twenty-Four Months' Imprisonment Is Sufficient But Not Greater Than Necessary To Achieve The Goals of Sentencing

The proper sentence in this case takes into consideration: (1) Mr. Green's limited role in the offense in relation to other members of the conspiracy; (2) Mr. Green's history and characteristics that establish he is a loving and caring family man who has never been incarcerated before and may face removal from the United States after serving his sentence because he failed to initiate his change of status and become a citizen prior to being involved in the instant offense; and (3) that lengthy incarceration is not necessary to deter Mr. Green from future criminal conduct. It is respectfully submitted that 24 months' imprisonment is sufficient but not greater than necessary to achieve 18 U.S.C. § 3553(a)'s sentencing goals.

### 1. Mr. Green's Role in the Offense

Mr. Green admits and acknowledges how serious, dangerous, and reckless the instant offense was and he accepts full responsibility. He is remorseful and deeply regrets the resultant psychological trauma suffered by the employee of the company that was forcibly robbed. However, this Court should take into consideration that Mr. Green's role in the offense was limited to that of a driver. While responsible for the foreseeable actions of his co-conspirators, the facts remain that Mr. Green did not carry, brandish, or use a firearm, nor did he physically threaten or even interact with the victims of the robbery. And his share of the robbery proceeds were accordingly limited. The robbery resulted in the theft of approximately $252,000 for which Mr. Green was promised $40,000 and only received $10,000.

Accordingly, while an admittedly serious offense, Mr. Green's limited role in the offense should be given consideration in fashioning the appropriate sentence.

### 2. The Appropriate Sentence Should Heavily Weigh Mr. Green's History and Characteristics That Establish His Devotion to His Family, Lack of Substantial Criminal History, and Likelihood That He Will Be Deported

Mr. Green is devoted to his family and has overcome extraordinary physical disabilities and emotional abandonment to be a strong provider and devoted family man. He is more than the crime for which he has pled guilty. His involvement in the instant offense remains the poorest decision Mr. Green has made in his life and he is suffering deeply as a result.

As noted in the PSR, Mr. Green grew up in a crime-ridden and impoverished part of Jamaica. He suffered physical abuse from his mother who engaged in overzealous discipline and suffered from a father who never said more than a few words to Garfield his whole life. Garfield can only recall one conversation with his father. That conversation consisted of his father saying, "Garfield, I cannot find my shoe." He never had any other conversations with his father, even when his father came to see him in the hospital after Garfield was struck by a stray bullet that resulted in the amputation of one of Garfield's legs. His father has never hugged Garfield.

Despite his difficult upbringing, Garfield was able to excel as a Jamaican military cadet and as a member of the Jamaican National Rugby Union Team. Mr. Green was selected for the National

2

Team, was sponsored, and was working towards getting a scholarship to play in Canada full-time as a professional rugby player. While working towards that in Canada, he traveled to Jamaica during an offseason break to see his mother and friends. While home and on his way to see a friend in order to give him some clothes that Garfield had purchased for him in Canada, Garfield was caught in the middle of a gang shootout and struck twice in the leg by stray bullets. His injuries were life threatening, ended his rugby career, and resulted in the loss of one of his legs.

After a very lengthy hospital stay, Mr. Green focused his attention on moving forward in life. He moved to the United States, met his wife, had a child, and has been working as a member of the Dock Builders Local Union 1556. Garfield is a gifted worker who is skilled in carpentry, welding, and countless other construction disciplines. He has worked on some of the most complex and physically demanding jobs in New York, including the World Trade Center, new Yankee Stadium, Rikers Island, and the Whitestone Bridge. He has an extraordinary work ethic and does not let his handicap slow him down. Adam Harkin, a work colleague, writes:

> I have known him to be a dedicated Union man, someone who always looked out for his fellow worker. He was always willing to take the time [to] show people the right way to do something. Through his leadership and his skill in the trade he has impacted many of us for the better.
>
> Garfield works in an extremely physically demanding and dangerous trade. A trade where misstep by you [*sic*] or your partner could cause serious injury or death. I have to put my life in his hands on the job site many times and would do so again. As I said earlier I have worked side by side with Garfield many times over the years. When I first met him I had no idea that he was missing a leg. It was inconceivable to me that someone could do the type of work that we do with that kind of handicap. It wasn't until we were climbing on a boom of a crane that I noticed that metal showing through a hole in his pants. I have since come to know that his injury causes him constant pain but he always worked through it. He was never late and never missed a day.

*See* Letter of Adam Harkin at Exhibit "A."

While Garfield was a hard working laborer, his focus was always his family, raising his daughter, being a good husband to Shamaya Green, and helping support his extended family. His family describes a jovial, gentle, respectful, industrious, hard working, ambitious, devoted father who would give the shirt off his back to anyone in need. That is what makes this offense so shocking to his family, friends, and colleagues. Garfield is so ashamed of his conduct, that he only allows visits from his wife at the Metropolitan Detention Center ("MDC"). His criminal conduct does not represent the real Garfield Green. He is the man described so endearingly by his friends and family. As his niece, Janelle Wells, writes:

> When I first came to the [S]tates I was accepted by him and his wife – they gave me a roof over my head and food when no one else was there to help me as both my parents still reside in Jamaica. Garfield is good to others, ambitious, remarkable, funny, incredible, energetic, and most importantly a loving Dad. God

3

> is with my uncle because everything that have [*sic*] set out to destroy him he [has] overcome it and he's the strongest person I know. I am just hoping that he can overcome this situation in the same manner as he has everything else.

*See* Letter of Janelle Wells.

Garfield's arrest has torn apart his family. It came as such a shock to those closest to him and they are still reeling. His wife writes:

> I watch him with my 9-year-old daughter Mya, and he is the kind of father that I wish I had in my life. He is supportive, loving and let her know that she is number one priority. We relocated upstate around two years ago and his main reason was that he wanted Mya to get a better education and to grow up in a neighborhood where she could feel comfortable in. He wanted to give her the life that he didn't have with his father. Since he has been gone, apart from the financial and emotional stress that his absence has caused, seeing the effect on Mya has been the hardest to watch. She is very sensitive and therefore we have not told her what has happened as of yet. We have told her that he is out of state at work. He calls her nearly every day once in the morning and once at night to let her know that he is still there for her. He is waiting for his sentencing to tell her so that he can give her an exact date of his return. Garfield is dreading that conversation but he knows its part of what he must do which is to own up to his mistakes and explain that there are consequences for every action.

*See* Letter of Shamaya Green. Even more tragically, his conversation with his daughter will have to include the possibility of his removal from the United States as a result of the offense because he did not get around to applying and receiving United States citizenship. At the time, with all of his family and work responsibilities, hiring counsel and preparing the necessary paperwork to gain United States citizenship was always something left for the next week. Now, seventeen years after coming to the United States, he faces removal and further separation from his wife and children because of that failure.

Mr. Green's history and characteristics establish that despite his flaws and criminal conduct, his true nature is that of a man devoted to his family, a family from which he may be separated as a result of his deportation. Accordingly, this Court should take into account Mr. Green's history, characteristics, and the overwhelming support he has from his family in determining a just sentence.

### 3. Lengthy Incarceration Is Not Necessary to Deter Mr. Green

A lengthy prison term is not necessary to deter Mr. Green from future criminal conduct. This is the first time he has ever been incarcerated and most recently it has been very difficult for him.[1]

Mr. Green's arrest and likely deportation has upended his primary and extended family. His children and wife have been left without the primary breadwinner. He has missed the birth of his second child. When he is released from prison and likely removed from the United States, the family will have to contemplate how to ensure their well-being while still staying together. All of these consequences and challenges facing Mr. Green and his family are more than sufficient deterrence.

Furthermore, at forty-seven years old, Mr. Green is considered an older defendant. The negative correlation between age and criminal recidivism has been documented across time and cultures innumerous studies. *See, e.g.,* Travis Hirschi & Michael Gottfredson, *Age and the Explanation of Crime,* 89 Am. J. Sociology 552, 555, 580 (1983); Elizabeth Oddone Paolucci *et al.*, Nat'l Found. For Family Research & Educ., A Review of Marital and Family Variables as They Relate to Criminal Recidivism 14 (Nov. 2000), http://www.csc-scc.gc.ca/research/092/r92_e.pdf; Mark Ouimet & Marc Le Blanc, *The Role of Life Experiences in the Continuation of the Adult Criminal Career,* 6 Criminal Behavior & Mental Health 73, 83 (1996) (concluding that "there is a strong and significant effect of maturation that is independent of the exposure to anti-criminal institutions such as family or work").

Multiple studies also demonstrate that marriage and fatherhood reduce the likelihood of recidivism. For example, in a study of 1,000 males (500 juvenile delinquents and 500 control subjects), researchers found that marriage was associated with a 35% decrease in criminal activity over a 15-year period, even for individuals with a history of delinquent behavior. *See* Robert J. Sampson *et al, Does Marriage Reduce Crime? A Counterfactual Approach to Within-Individual Causal Effects,* 44 Criminology 465 (2006); *see also* Jessica M. Craig *et al., Marriage as an Intervention in the Lives of Criminal Offenders,* in *Effective Interventions in the Lives of Criminal Offenders* 19, 23, 30 (John A. Humphrey & Peter Cordelia, eds. 2014) (finding a "statistically significant negative relationship between marriage and desistance from crime"). Multiple studies have also concluded that fatherhood is correlated with a reduction in criminal behavior; *see also* David C. R. Kerr, *Changes in At-Risk American Men's Crime and Substance Use Trajectories Following Fatherhood,* 73 J. Marriage & Family 1101, 1105, 1112 (2011) (observing that "the older men were when they became fathers, the more pronounced were the decreases in crime . . . that followed the births").

Accordingly, we submit that lengthy incarceration is not necessary to deter Mr. Green from future criminal conduct or protect the public from those potential crimes.

---

[1] Mr. Green's incarceration has been particularly difficult due to a lack of care on the part of the MDC medical staff. Prior to his plea, Mr. Green was housed in the Metropolitan Correctional Center ("MCC") but was moved to MDC shortly after his plea proceeding. The MCC staff mistakenly left behind an essential piece of Mr. Green's prosthetic leg. Without the piece, his leg is unstable, he is at risk of falling, and the prosthetic places extraordinary pressure on what remains of his leg. He has tried every effort to obtain the missing piece through medical staff and the undersigned counsel has communicated directly with the legal departments of both MCC and MDC to no avail. Accordingly, Mr. Green has been in extraordinary discomfort and pain for the past three months.

## III. Conclusion

A lengthy term of imprisonment would not represent a sentence sufficient, but not greater than necessary to achieve § 3553(a)'s goals of rehabilitation and deterrence. For this forty-seven-year-old devoted father who has never served any time in prison before this case, 24 months' imprisonment would be sufficient. Furthermore, he faces the collateral punishment of deportation. When he completes his sentence, he will likely be removed from the United States and sent to Jamaica, the place of his birth but not the country in which he has made a home for the last seventeen years.

We respectfully submit that when this Court assesses Mr. Green's (1) limited role in the offense in relation to other members of the conspiracy, (2) history and characteristics that establish that he is a loving and caring family man who has never been incarcerated before and may face removal from the United States after serving his sentence, and (3) that lengthy incarceration is not necessary to deter him from future criminal conduct, we are confident that it will conclude that 24 months' imprisonment is appropriate.

Respectfully submitted,

/s/

César de Castro


cc: Margaret Graham
      Christopher Dimase
      Assistant United States Attorneys ( *via* e-mail)